T.C. Memo. 1998-229


UNITED STATES TAX COURT


EL CHARRO TV RENTAL, INC., DIANA L. PETERS,
TAX MATTERS PERSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25467-92.                       Filed June 29, 1998.


John R. Gerdes and Timothy P. O'Sullivan, for petitioner.

Edith F. Moates, for respondent.


MEMORANDUM OPINION

GERBER, Judge:  Respondent, on August 12, 1996, filed a
motion for entry of decision, seeking to cause petitioner to
comply with respondent's understanding of the parties' 
stipulation to be bound by the outcome of the same issues for
earlier years.  This case was calendared for trial at Oklahoma

City, Oklahoma, and was tried on June 1, 1994.  At the conclusion of the trial, the parties agreed to defer the setting of post-trial briefing dates in order to await the outcome of the earlier case[1] already under consideration by another division of this Court.  The parties in this case stipulated to a substantial portion of the facts and proffered only a limited amount of testimony.  The parties believed that they could agree to be bound by the outcome of El Charro I, but presented their evidence in the event that factual distinctions were found in that case.  The earlier case involves three cases that had been consolidated for trial.  El Charro TV Rental, Inc. (El Charro), is one of the participating entities involved in the earlier consolidated cases.  Petitioner's 2 taxable years prior to those before the Court in this case are the subject of El Charro I.  It was thought that an opinion in El Charro I could obviate the need for briefing and an opinion in this case.

Following an opinion in El Charro I, the parties contacted the Court and advised that an agreement had been reached to settle all issues in this case subject to the outcome of petitioner's appeal of El Charro I.  On June 15, 1995, the

---

[1] For purposes of this opinion, the earlier case is referred to as "El Charro I".  ABC Rentals of San Antonio, Inc. v. Commissioner, T.C. Memo. 1994-601, affd. without published opinion sub nom. El Charro TV Rental, Inc. v. Commissioner, 79 F.3d 1145 (5th Cir. 1996), and revd. and remanded 97 F.3d 392 (10th Cir. 1996).

parties' stipulation of settlement was filed. In the stipulation, the parties agreed that the same issues were present in El Charro I and that a "Notice of Appeal was filed with [the Tax Court by the petitioner in this case] appealing * * * [El Charro I] to the 5th Circuit."

The operative paragraphs of the parties' stipulation are as follows:

> 5. If the Circuit Court determines the income forecast method of depreciation is not a proper method for depreciating the rental units inventory of the taxpayer in * * * [El Charro I] the parties agree that the above adjustments shall be resolved as if the petitioner in this case were the same as the taxpayer in * * * [El Charro I]. In that event, a decision shall be submitted in this case when the decision in * * * [El Charro I] becomes final under I.R.C. § 7481.

> 6. If the Circuit Court does not determine the income forecast method of depreciation is an improper method for depreciating the rental inventory of the taxpayer in * * * [El Charro I], there remains in dispute in this case the application of the income forecast method to the petitioner's rental units inventory. In that event, no new evidence will be introduced by the parties and the issue will require briefing by the parties.

During the time the appellate case was pending before the Court of Appeals for the Fifth Circuit, the parties in this case submitted status reports. Eventually, they advised that on February 14, 1996, the Court of Appeals for the Fifth Circuit, without published opinion, affirmed this Court's opinion in El Charro I. On May 1, 1996, the Court of Appeals for the Fifth

Circuit denied a request for a rehearing en banc in El Charro I.[2] After the time for filing a petition for certiorari had expired, respondent moved for entry of decision. In response to that motion, petitioner contended that the affirmed opinion in El Charro I failed to address the legal issue presented in this case and El Charro I.

We were persuaded to delay ruling on respondent's motion because the same issues concerning the other participants in the earlier consolidated cases had been appealed to the Court of Appeals for the Tenth Circuit by the participants other than petitioner. The Court of Appeals, on April 14, 1998, issued its opinion, reversing and remanding the opinion issued by this Court as it affected the two controlling case participants other than petitioner herein. At this juncture, alternative possibilities for resolution have been exhausted, and it is not appropriate to delay further action on respondent's motion.

Discussion

The operative language of the agreement between petitioner and respondent limits the resolution of the adjustments in this case to the same result obtained by petitioner as a litigant in El Charro I if it was decided that the income forecast method was

---

[2] El Charro TV Rental, Inc. v. Commissioner, 79 F.3d 1145 (5th Cir. 1996), rehearing denied 85 F.3d 627 (5th Cir. 1996), affg. without published opinion ABC Rentals of San Antonio, Inc. v. Commissioner, T.C. Memo. 1994-601.

not the proper method for depreciating a rental units inventory. Further, the controlling result was limited to the final outcome of the appeal to the Fifth Circuit. If the income forecast method had been found to be permissible, it would have then been necessary to consider the underlying facts in this case to determine whether petitioner qualifies.

The Court of Appeals for the Fifth Circuit affirmed this Court's decision without published opinion. Petitioner here argues that the Court of Appeals' failure to issue a published opinion does not comply with paragraph five of the parties' stipulation or agreement, which comes into play "If the Circuit Court determines the income forecast method of depreciation is not a proper method for depreciating the rental units". It is petitioner's position that the Court of Appeals' affirmance without published opinion is not a determination by the Court of Appeals. This argument is without merit. By affirming this Court's decision, the Court of Appeals has made the requisite determination.

Accordingly, this Court's opinion in El Charro I is dispositive. Our review of ABC Rentals of San Antonio, Inc. v. Commissioner, T.C. Memo. 1994-601, affd. without published opinion sub nom. El Charro TV Rental, Inc. v. Commissioner, 79 F.3d 1145 (5th Cir. 1996), and revd. and remanded 97 F.3d 392 (10th Cir. 1996), reveals that this Court did consider and decide

whether, as a matter of law, the income forecast method could be used in connection with consumer durables leased under rent-to-own contracts.

In El Charro I, respondent had determined that the income forecast method could not be used with the particular assets in question.[3]    In <u>ABC Rentals of San Antonio, Inc. v. Commissioner</u>, <u>supra</u>, the Court saw the question to be addressed as:   "whether the consumer durables leased under rent-to-own contracts are properties properly depreciable under the income forecast method."   Focusing its attention on section 168(f)(1),[4] the Court held:

> that petitioners have failed to demonstrate that the consumer durables leased in their rent-to-own business constitute property properly depreciated under the income forecast method of depreciation.  It is clear that the consumer durables in this case are not property similar in character to the assets which have been allowed to use the income forecast method of depreciation.

The Court's underlying rationale for its holding included the following:

---

[3] In this case, the parties presented three issues, including the issue decided in El Charro I.  The other two issues involved whether El Charro made a valid election to use the income forecast method under sec. 168(f)(1) and whether use of the income forecast method clearly reflects its income.  The question decided in El Charro I, however, preempts and obviates any need to consider the "other two issues."

[4] Section references are to the Internal Revenue Code in effect for the period under consideration.

The underlying theory of the income forecast method is that the useful life of certain assets of an artistic or creative character does not depend on physical wear or tear or the mere passage of time, but rather the vagaries of public taste.  Consequently, an estimate is made of the total income expected to be derived from such an asset throughout its projected lifetime in the business.  The depreciation for a given year is then allocated based on the net income actually earned in that year.  In this case, however, the consumer durables were leased for fixed terms, and the income stream produced by these assets was relatively steady, unlike that of the television films * * *.

Petitioner, in support of her position, offered the following quote from this Court's El Charro I opinion:

Where a taxpayer makes an election pursuant to section 168(f)(1), the Commissioner determines that the elected method is improper, the taxpayer bears the burden of proof with respect to the issue that the useful life of the property is properly measured under the unit-of-production method or any other method not expressed in terms of years (including the income forecast method).  In view of the even flow of income earned by these assets, and because the useful life of these assets is accurately measured by the passage of time and ordinary wear and tear, we hold the income forecast method of depreciation is not appropriate or applicable in this case as it produces a distortion of income and does not further the integrity of periodic income statements by making a meaningful allocation of the cost entailed in the use of the asset to the periods to which it contributes.  We, therefore, hold that petitioners have not met their burden of proof with respect to the depreciation deductions claimed during the taxable years in issue.  * * *

Focusing on the above-quoted portion of this Court's Memorandum Opinion, petitioner argues that factual distinctions exist between the methodology used in El Charro I and in this case.  In that regard, petitioner points out that a different calculation method was used for rental units in the years

currently before the Court than was used for the years involved in the factual pattern for El Charro I.  Petitioner further contends that the El Charro I opinion is binding for rental units placed in service during 1987 and 1988, but that it is not binding for the 1989 and 1990 years now before the Court. Petitioner also contends that she met her burden of proof referred to in the El Charro I opinion as to the accurate use of the floating method to measure useful life of rental units.

We disagree with petitioner's interpretation of this Court's above-quoted opinion.  The holding in that case is that the income forecast method may not be used for the type of asset used in El Charro's business.  In the paragraph relied upon by petitioner, the Court is explaining that, in addition to the rental property's not being legally appropriate for use of the income forecast method, as a factual matter, the calculation method used for those years to compute the amount of depreciation did not comport with the principles underlying the income forecast methodology.  In addition, the parties' stipulation agreement would permit consideration of whether petitioner factually qualified for use of the income forecast method only if it were decided that such method was available for use with respect to the rental assets.

The Court of Appeals for the Tenth Circuit describes the issue in the earlier consolidated cases as "a legal issue

regarding application and interpretation of § 168(f)(1)." ABC Rentals of San Antonio, Inc. v. Commissioner, __ F.3d __ (10th Cir., Apr. 14, 1998) (slip op. at 6).  In addition, that Court of Appeals also noted that, even if the underlying facts had not been stipulated, "this case still would present a mixed question of law and fact in which the legal issues predominate." Id.  In ABC Rentals of San Antonio, Inc. v. Commissioner, supra, the Court of Appeals for the Tenth Circuit decided that section 168(f)(1) did not preclude use of the income forecast method, and the case was remanded to this Court for a decision as to whether a proper election was made under section 168(f)(1) and whether the income forecast method was properly applied to produce reasonable depreciation allowances.  Id. (slip op. at 23).[5]

On occasion, this Court relies on a test case process for resolving issues that affect more than one taxpayer.  See Rybak v. Commissioner, 91 T.C. 524 (1988); Clayden v. Commissioner, 90

---

[5] The earlier consolidated cases were appealed to different appellate venues (the Courts of Appeals for the Fifth and Tenth Circuits).  Petitioner, as Tax Matters Person of El Charro, appealed to the Fifth Circuit, and the other two cases were appealed to the Tenth Circuit.  Although the El Charro I opinion was affirmed without published opinion by the Fifth Circuit, on Sept. 27, 1996, the Court of Appeals for the Tenth Circuit reversed and remanded the ABC Rentals of San Antonio case.  See ABC Rentals of San Antonio, Inc. v. Commissioner, 97 F.3d 392 (10th Cir. 1996).  A rehearing was sought, and, on Apr. 14, 1998, the Court of Appeals for the Tenth Circuit granted the rehearing petition and vacated and revised its original opinion.  The revised opinion reversed the decision in the case of ABC Rentals of San Antonio and remanded for further proceedings.

T.C. 656 (1988); <u>Anderson v. Commissioner</u>, 83 T.C. 898 (1984), affd. without published opinion 846 F.2d 76 (10th Cir. 1988); <u>Sennett v. Commissioner</u>, 69 T.C. 694 (1978). To some extent, the test case process depends upon the parties' agreement to be bound by the outcome in the test case.

A settlement stipulation, including a stipulation to be bound, is "in all essential characteristics a mutual contract" that is "entitled to all of the sanctity of any other contract." <u>Saigh v. Commissioner</u>, 26 T.C. 171, 177 (1956); see <u>Fisher v. Commissioner</u>, T.C. Memo. 1994-434; <u>Estate of Satin v. Commissioner</u>, T.C. Memo. 1994-435. In this regard, general principles of contract law are applied in construing such agreements. <u>Robbins Tire & Rubber Co. v. Commissioner</u>, 52 T.C. 420, 435-436 (1969); <u>Fisher v. Commissioner</u>, <u>supra</u>; <u>Estate of Satin v. Commissioner</u>, <u>supra</u>. Generally, we look within the "four corners" of the agreement to ascertain the intent of the parties. <u>Rink v. Commissioner</u>, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995). Where an agreement is ambiguous, the Court may look to extrinsic evidence to determine the parties' intentions. <u>Woods v. Commissioner</u>, 92 T.C. 776 (1989).

As discussed above, the El Charro I opinion of the Tax Court holds that, under section 168(f)(1), El Charro was not entitled to use the income forecast method for the type of property in service. The parties agreed to be bound in this case

by the holding in El Charro I as determined by the Court of Appeals for the Fifth Circuit. By affirming the Tax Court's decision, the Court of Appeals has confirmed (determined) that the income forecast method for depreciation is not a proper method for depreciating the rental units inventory. There is no ambiguity in the parties' agreement or the El Charro I opinion.

El Charro is in a paradoxical situation because it may experience a result different from the taxpayers whose cases were appealed to the Court of Appeals for the Tenth Circuit and because it may have had the right to appeal to the Court of Appeals for the Tenth Circuit. El Charro was incorporated in Texas and alleged that its principal place of business is in Kansas. El Charro's lot was chosen by reaching an agreement with respondent to be bound by the outcome of the appeal to the Fifth Circuit. That choice cannot now be retracted because a more favorable result might occur for El Charro. In order to maintain the finality of parties' agreements to resolve cases, it is necessary to enforce the parties' agreement here.

To reflect the foregoing,

<u>Respondent's motion for entry of decision will be granted, and decision will be entered in accord with the parties' agreement.</u>